## MARSHALL ET AL. v. HANN.

In error to Cumberland Common Pleas.

Parties may, without signing a written agreement, be bound by its terms, if they recognize and adopt its stipulations.

It is error if a court refuse to instruct the jury, that if both parties recognize and act under such agreement as valid and subsisting between them, they are bound by its terms and stipulations.

In assumpsit for work and labor, it is competent to shew that the services have not been performed in the manner, agreed upon; and specified penal sums, for the plaintiff's refusal or non performance of work, being in the nature of liquidated damages, may be set off against his claim.

*Browning* for plaintiffs in error.

*D. Elmer* and *H. W. Green* for defendant.

The case is stated in the opinion delivered by

HORNBLOWER, C. J. This was an action of assumpsit bro't by the defendant in error, against Randall Marshall, Thomas C. Marshall, Randolph Marshall, and John Stille, for work and labor done for them, by the plaintiff as a glass blower, at the Marshallville Glass Works.

The defendants pleaded non assumpsit and payment, with a notice of set off.

On the trial of the cause, the plaintiff having proved that he worked at said glass works, as a glass blower, from some time in August, 1835, until in the Spring of 1836, gave in evidence, a writing signed by Thomas C. Marshall, one of the defendants below, in the following words, " Marshallville, April 22, 1836, Mess. Marshall, Stille & Co. cr. Japhen Hann with 556 dollars and 48 cents, for blowing glass, &c. T. C. Marshall."

It further appeared in evidence by the book keeper of the defendants, who was called as a witness by the plaintiff, that the mode of doing business at the works, was for the workmen to hand in to him a bill of their work to be credited to them on the books of the company, but that this bill had never been given in to him for that purpose. The plaintiff then rested. Whereupon the defendants below offered, and read in evidence, without objection, (the signatures to the instrument being admitted) a writing dated the 12th of February, 1835, purporting to be an agreement between Randall Marshall, or the person or persons who may be the proprietors of the Marshall-

ville Glass Works : and the plaintiff, Hann, together with several other persons, whereby they severally agreed to blow and flatten glass ; and to do all other work and duties appropriate to and customary for glass blowers to do, at the said glass works, from the 20th August, 1835, to the 15th June, 1836, at and for certain wages, or compensation for certain services therein particularly specified : and the said several glass blowers did therein also stipulate that for every *wilful neglect* or *refusal* to blow, flatten, or do other work customary as aforesaid, which any of them should be guilty of, the person so neglecting or refusing, should pay to the said " parties of the first part," the sum of ten dollars.    This writing was signed as follows, " For Randal Marshall, Randolph Marshall," and then by the plaintiff Hann, and four other glass blowers.

After the defendants had read the said agreement in evidence, they proved by several witnesses, that the plaintiff had on various occasions, under pretence, with other workmen, of *striking* for higher wages, *wilfully* neglected and refused to blow, and do other work customary for glass blowers to perform : and the defendants insisted upon their right to have deducted from the amount of the plaintiff's wages, the several sums, which by the terms of the aforesaid agreement, he had become *liable* to *pay* them, for his wilful neglects and refusals aforesaid.

After the cause had been summed up on both sides, the counsel for the defendants called on the court to charge the jury " in relation to the validity of the said agreement ; and to give it in charge to the jury, that if they were satisfied from the evidence, and circumstances of the case, as stated by the witnesses, that both parties acted under the said agreement, then both parties were bound by it."    But the court refused so to charge the jury, or to give them any charge in relation to the said agreement ; and this is assigned for error.

There seems to have been no question made on the trial, but what the plaintiffs in error, were the proprietors of the glass works, during the time when the services were performed by the plaintiff below : nor but that the compensation claimed by him, was such as has been stipulated for in the said agreement : nor was there any dispute at the trial, about the right of Randal Marshall to act for, and as the agent of Randolph Marshall, in mak-

ing the said agreement. On the contrary, the signatures were admitted, and not the least objection raised to giving the instrument in evidence as an existing and valid agreement between the parties. Nevertheless, the court when called upon to do so, refused to charge the jury in relation to the said agreement, and to instruct them that if both parties recognized and acted under it as a valid and subsisting agreement between them, they were bound by its terms and stipulations.

In refusing so to charge, I am clearly of opinion, the court committed an error. It is now argued by the counsel for the defendant in error, that he was not bound by that agreement—or rather, that it was no agreement at all, for want of proper parties and of mutuality; and that it ought not therefore to have been admitted in evidence, or to have had any influence on the result of the cause. Whether the writing was a binding agreement between the parties to this suit, in such a sense as that either of them could have maintained an action upon it against the other for non performance on his part, is not now the question. In other words, whether the plaintiff below could have maintained an action against any persons who happened to be the owners of these glass works, on the 20th August, 1835, for refusing to employ and pay him according to the terms and conditions contained in that writing—or, whether any persons who happened on that day to be the proprietors of the said works, could have maintained an action against Hann for refusing to enter into their employ to blow glass, &c., upon the terms and at the wages mentioned in the said writing, are questions that need not be answered.

But if the defendants employed the plaintiff upon the faith of that agreement; and if the plaintiff himself went to work for the defendants as proprietors of the Marshallville glass works, and performed the services for which he brought this action, under and in virtue of that agreement; then I cannot doubt but both parties were bound by its terms and conditions. At any rate if the relation of employers and employed, at its commencement, and so long as it continued between the parties, had reference to that agreement, or instrument of writing, or memorandum, whichever it may be called—as regulating or indicating the understanding of the parties, as to the nature and character

of the services to be performed, and the compensation to be paid ; it became by adoption at least, an agreement, or written evidence of an agreement between them, as to the nature and extent of those services, on the one side, and the compensation to be paid on the other. If so, it became very material on the trial, for the jury to know whether they were to consider that agreement in any respect, as binding between the parties—because, although an action of indebitatus assumpsit will lie, for services performed under a special agreement, where, by the terms of that agreement the services are to be rendered for a money consideration ; *Cook* v. *Munstone,* 1 *New R.* 351; *Bul. N. P.* 189; *Alcorne* v. *Westbrooke,* 1 *Wils.* 117; yet it is competent for the defendant, in such an action, to shew that the services have not been performed in the manner specified in the agreement. *Basten* v. *Butler,* 7 *East,* 479; *Farnsworth* v. *Garrard,* 1 *Camp. R.* 38; *Denew* v. *Daver,* 3 *Camp. R.* 451; *Poulton* v. *Lattimore,* 9 *B. & C.* 259; *Street* v. *Blay,* 2 *B. & Adol.* 456; *Thornton* v. *Place,* 1 *M. & Rob.* 219; *Chappel* v. *Hicks,* 2 *C. & M.* 214; and see *Smith's leading cases, p.* 8, *&c. in note, in* 23 *vol. Law Lib.*

But again, besides the general issue in this case, there was a plea of payment with a notice of set off. Now if the services rendered by the plaintiff below, were performed under the contract, then by the terms of that contract, he had become indebted to the defendants below, in several sums of money, which were in the nature of liquidated damages between the parties, and which the defendants had a right to set off against the plaintiff's demand for work and labour. The case of *Fletcher* v. *Dyche,* 2 *Ter. R.* 32, is very much like this, and a clear precedent in support of the above position. In *Burgess* v. *Tucker,* 5 *Johns. R.* 104, Thompson, J. said, " wherever the debt is so certain, that indebitatus assumpsit will lie for it, it may be set off." The same point was ruled in *Armstrong* v. *Brown,* 2 *Wash. C. C. R.* 34; *Cowp.* 56. Now if the parties were acting under this contract, then for every wilful neglect to blow, the plaintiff became indebted to the defendants, in the sum of ten dollars—and after the special agreement had terminated by its own limitation, the defendants might have maintained an assumpsit for the amount of those penalties.

Upon the whole, I am of opinion that the court committed an

error in not instructing the jury, as they were called upon to do, by the defendants' counsel ; and that therefore the judgment ought to be reversed, and a *venire de novo* issued.

FORD, WHITE and NEVIUS, Justices, concurred.

DAYTON, J.   Whether the court committed an error in refusing to charge the jury in reference to the validity of the agreement offered in evidence, depends wholly upon the question whether the defendants' counsel were right in the legal positions assumed by them.   Notwithstanding some *dicta* scattered through the books, it is a clear principle, that the refusal of the court to charge, can only be assigned for error where such refusal has operated to the injury of him who asks the charge. If, therefore, it would have been the legal duty of the court to charge against the defendants, if at all, such refusal is not assignable by them, for error.   3 *Chitty's Prac.* 916 ; *Depeyster* v. *Columbian Ins. Co.* 2 *C. R.* 85 ; *Mills* v. *Sleght*, 2 *South.* 566 ; *Folly* v. *Vantuyl*, 4 *Halst.* 164.

I. Was the agreement valid between the parties to this suit, in its inception ?

II. If not valid in its inception, could the subsequent conduct of the parties in acting under it, make it obligatory upon them ?

That the agreement was not valid as between the parties to this suit, in its inception, is, I think, manifest.   What might have been its operation between the plaintiff below, one of the glass blowers, by whom it was executed, and Randal Marshall, the only party of the other part, for whom it was executed, is not necessary to enquire, as this suit is not between them.   The agreement was in the alternative, either with Randal Marshall, or such person or persons as might be proprietors at a future day —and the suit is now between the plaintiff and those future proprietors.   But this agreement was never executed by those future proprietors, or any person in their behalf.   Randolph Marshall executed it as the agent of Randal Marshall alone.   The agreement in its creation was not therefore binding upon the proprietors, and as a consequence, was inoperative in their hands against the glass blowers, for want of mutuality.   *Chitty on C.* 4 ; 2 *Kent, C.* 463 ; *Com. on C.* 23.

It cannot be pretended that such a contract will attach itself to the property and run with it; it is wholly personal in its character. An agreement might have been made with Randal Marshall, binding him as well for himself as his assignees; but that must have been a personal matter between him, Randal Marshall, and the glass blowers. So too, Randal Marshall might, at the time of transferring an interest in these works to other proprietors, if he did so transfer them, have bound them to abide by and perform prior contracts entered into by him, in reference to the employ and pay of hands in the works. But this again, must have been a personal matter between him and those persons to whom he conveyed. The right of action for a breach must have been in him, and not in the hands. In no aspect therefore of this case, can this agreement in its original formation, be held obligatory between the present parties to this suit.

II. But supposing that the contract were inoperative originally, the counsel of the defendants below, called upon the court to charge the jury that if they were satisfied from the evidence and circumstances, *that both parties acted under the agreement*, they were both bound by it; which the court declined to do, and declined to give any charge at all.

Upon this point of the case, I have had some doubts, for reasons which it is not now necessary to state. But upon reflection I am prepared to reverse this judgment on the ground that this must be viewed either as a contract made by an assumed agent, and subsequently recognized by the principal, or as the evidence of an original agreement between these parties. If A contract as the agent of B, though in fact he is not so, yet if B think proper afterwards with a knowledge of the facts, to recognize such agency, and act upon it, he is undoubtedly bound. And so too, where the principal neglects to dissent within a reasonable time (some of the cases say on the very first opportunity) after being apprised of the unauthorized act, he will be presumed as assenting thereto, and bound accordingly. These principles are perfectly well settled, and will be found amply supported in their varied phrases, by the following English and American cases.

2 *Durnf. & E.* 189, *note;* 5 *Esp. R.* 77; 2 *Salk.* 442; 2 *Lord Raym.* 930; 2 *Str.* 859; 4 *Bing.* 722; 7 *East,* 166; 1 *John. C.* 110· 12 *J. R.* 300; 4 *Wend.* 465, 7; 4 *Rawle. R.* 230; 14 *Sergt.*

Marshall et al. v. Hann.

& R. 27, 30; 3 *Mass. R.* 70; 6 *Mass. R.* 193; 8 *Ib.* 113; 10 *Ib.* 230; 12 *Ib.* 60, 185; 13 *Ib.* 182; 6 *Pick.* 203; 8 *Ib.* 9; 9 *Peters' U. S. R.* 607, 629; 1 *Peters' C. C. R.* 496; 9 *Cranch,* 153; 1 *Peters' U. S. R.* 46; 3 *Wash. C. C. R.* 151.

But if it be said in strictness, this agreement was not executed by any person as even the assumed agent of these future proprietors, then the alternative presents itself. There are more modes of adopting the contents of a paper, than by executing it. Had no agreement ever been signed by the glass blowers themselves, it would have been entirely competent for the defendants to show that a notice had been pasted up in a conspicuous place, stating the terms upon which hands were employed at the furnace, which if seen and understood by the glass blowers, before commencing their work, in the absence of other testimony, would bind them. The natural inference from their conduct, would be that they assented to its provisions—and so too, if other owners came in and continued the work with the same hands, knowing of the existence of such notice, the natural inference would be that they too assented to its provisions, and they would be bound accordingly.

The contract is not under seal—it is but a simple contract, of which, the paper in question is only the evidence. Even were the execution of it by the glass blowers, inoperative, yet if it have been adopted as the agreement of the parties; of which, both having acted under it, is the strongest evidence, it is binding upon them mutually; and so the court ought to have instructed the jury.

*Judgment reversed, and venire de novo awarded*

CITED *in Cole* v. *Taylor,* 2 *Zab.* 60; *Bowker* v. *Randles,* 2 *Vr.* 337.